### In re JACOB BERRY & CO.

(Circuit Court of Appeals, Second Circuit. October 11, 1906.)

No. 274.

BANKRUPTCY—RECOVERY OF PLEDGE—TRANSACTIONS BETWEEN STOCKBROKER AND CUSTOMER. ·

A deposit of securities with a stockbroker by a customer as margin, and as security against losses in stock transactions, under an agreement which does not contemplate a sale or disposition of such securities by the broker except in the event of losses, constitutes a pledge, and does not create the relation of debtor and creditor, and where the securities have not been sold by the broker to meet marginal requirements prior to his bankruptcy, they may be recovered by the pledgor from the bankrupt's trustee.

· Petition for Revision of Proceedings of the District Court of the United States for the Southern District of New York.

· See 147 Fed. 208; 146 Fed. 623.

· J. M. Rosenberg, for petitioners.

R. L. Sweezey, Graham Sumner, and A. W. Putnam, for respondents.

Before WALLACE, TOWNSEND, and COXE, Circuit Judges.

WALLACE, Circuit Judge. This is a petition by the trustees in bankruptcy of Jacob Berry & Co. to review an order of the bankruptcy court, awarding to various claimants of the bankrupts certain securities, or the proceeds thereof, in the possession of the trustees. Jacob Berry & Co. were stockbrokers, and the claimants were severally customers of the firm.

Upon the general question whether the relation between customer and stockbroker under the ordinary contract for a speculative purchase of stock is that of pledgor or pledgee, we are in accord with the decision of the court below, and have recently decided that such a relation does exist in Richardson, Trustee, v. Shaw et al. (C. C. A.) 147 Fed. 659.

: The claimants of the pledged stock in this case are not seeking to follow into the hands of the trustees in bankruptcy the proceeds of stock purchased for them by the brokers; but are seeking the proceeds of stocks which they had deposited with the brokers upon opening an account, or in the course of dealings, for speculative purposes. The contract between them and the brokers is found in the receipt delivered to each one of them by the brokers at the time of deposit, and is illustrated by the receipt of Mrs. Taggart, which reads as follows:

"Sep. 14, 1904.

· "Received from Anna D. Taggart 83 shs U. S. Steel pfd No. A30563–C15546. The same to be a general deposit, and this receipt is given and received with

the mutual understanding that Jacob Berry & Co. may hold the same as margin and as security for or apply the deposit in part payment of or on account of losses or any other transactions in the purchase or sale of stocks, bonds, securities, or commodities made by them for your account.

"This receipt is given and received upon the further understanding and agreement in consideration of Jacob Berry & Co. executing such orders for the purchase or sale of stocks, bonds, securities or commodities as may be given to them in writing, orally, by telegraph or telephone; that the said Jacob Berry & Co. may repledge, rehypothecate or loan any or all of said stocks, bonds, securities or commodities held by them on account thereof as margin or otherwise; may substitute similar stock, bonds, securities or commodities therefor, and that said Jacob Berry & Co. may, without notice upon the approximate exhaustion of margin sell, or buy as the case may be, any stocks, bonds, securities or commodities bought and sold or held by them as collateral, or margin, or otherwise, and that in case of contracts for future delivery that said Jacob Berry & Co. may close the same by purchase or sale, as the case may be, without notice, provided however, that such purchases or sales may be made upon the consolidated Stock and Petroleum Exchange of New York, the New York Stock Exchange, the Chicago Board of Trade, or in any other Exchange in the city of New York where such stocks, bonds, securities, or commodities are dealt in.

"No. A30563-33 Shs.
"No. C15546-50 Shs.

"Geo. M. Davis, Mgr."

The question upon which the rights of the parties really depends is whether the relation of pledgor and pledgee is created between client and stockbroker by a deposit of this character, or whether such a deposit is not in effect a release of the client's title to the security to the broker which creates the relation of creditor and debtor. If the deposit is to be regarded as a deposit of money, the broker is impliedly authorized to sell the stock and credit the proceeds to the client in account. If it is deposited merely as security, the relation of pledgor and pledgee certainly continues until losses arise which justify a sale of the stock. In the present case the brokers did not sell the securities deposited by the several claimants to meet marginal requirements on account of losses, but hypothecated them in a lump to obtain a loan to themselves.

It will be observed that the contract contains two distinct provisions: One relating to the deposited stock, and the other relating to the stocks, securities, etc., which the brokers are to purchase or sell for the client. It is the latter alone that the brokers "may repledge, rehypothecate, or loan," when held by them as margin or otherwise. As to the deposited stock, they "may hold the same as margin and as security" for losses on any transaction, or may apply it in part payment of or on account of such losses. If money had been deposited instead of the securities, it would ordinarily have been credited on account to the clients and stood as a margin against losses; and as to any balance in the brokers' hands at any time the clients would have been merely creditors. If the securities had been deposited under a stipulation in the contract that they should stand as a margin for a specific sum, perhaps the same legal consequences would have attended the transaction. But there is nothing in terms, nor as we think by implication, which suggests that the parties contemplated any sale of the deposited stock to the brokers, or any sale or disposition of it by the brokers except in the event of

losses of the client, approximately exhausting the marginal requirement.

The order under review is affirmed, with costs to the claimants severally.